UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-00529-H

CATHY ZION,                                                                                  PLAINTIFF

V.

UNITED STATES OF AMERICA, et al.,                             DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Cathy Zion, filed this federal tort action against the United States, the United States General Services Administration (collectively, "GSA"), and United States government employees after she was injured at a federal government office building. The United States substituted itself for the two government employees as the proper party liable pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA"). Additionally, Plaintiff sued DaeSung/LB&B Joint Venture ("DL Joint Venture"), DaeSung Corporation, LB&B Associates, Inc. (collectively, "the DL Entities"), and two principals of the DL Entities for negligence in carrying out their responsibilities for maintenance and safety of the same federal office building. By agreed order, the two principals of the DL Entities have been dismissed.

Under the FTCA, Plaintiff charges both GSA and the DL Entities with three counts of negligence: maintaining an unreasonably dangerous condition, failure to warn of the unreasonably dangerous condition, and negligent hiring and supervision of its employees. Apparently because the Kentucky statute of limitations for negligence actions had passed, Plaintiff did not assert any state tort claims either here or in other courts. As a consequence of the resulting unusual

1

circumstances, both GSA and the DL Entities now move to dismiss for lack of subject matter jurisdiction. The Court will summarize the pertinent facts and then discuss each motion in turn.

I.

On April 20, 2010, Plaintiff was delivering magazines to the Mazzoli Federal Office Building in Louisville, Kentucky when she entered through a fire door located on the loading dock. That door closed at a much quicker speed than expected, striking her heel and severing her Achilles tendon. Allegedly, the door closing mechanism had been malfunctioning for some time, and Defendants failed to post any warnings about this condition.[1]

The United States, through the GSA, owned and operated the Mazzoli Building, and contracted with DL Joint Venture to maintain the building.[2] According to the contract, DL Joint Venture was responsible for the maintenance and servicing of the loading dock, including the fire door that caused Plaintiff's injury. Plaintiff has sued two sets of defendants over her injuries: GSA and the DL Entities.

Both sets of defendants have now moved to dismiss due to a lack of subject matter jurisdiction. Such a motion comes in two varieties. First, a *facial* attack on subject matter jurisdiction "questions merely the sufficiency of the pleading." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (quoting *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). Second, where the defendant presents a *factual* attack

---

[1] Plaintiff alleges that GSA employees were aware of the malfunctioning fire door, as Plaintiff's husband discovered when he overheard various people in the Mazzoli Building talking about the incident immediately after it occurred.

[2] DL Joint Venture is the product of two separate corporate entities joining together, both of which are defendants in this case. DaeSung Corporation provides construction and facilities management services to private and government institutions, and LB&B Associates, Inc. performs similar services primarily for government institutions.

on subject matter jurisdiction,"no presumptive truthfulness applies to the factual allegations." *Id.* Rather the

Court weighs "the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Id.*

The core issue here is whether, under the factual circumstances, DL Joint Venture was a government employee or an independent contractor. The answer determines whether Plaintiff can recover from GSA and/or DL Joint Venture under the FTCA. This is a question of subject matter jurisdiction. *Durbin v. United States*, 996 F.2d 1214, at *1 (6th Cir. 1993). Federal law governs this issue. *Fisher v. United States*, 356 F.2d 706, 708 (6th Cir. 1966).[3] Under federal law, the burden to establish jurisdiction rests on the Plaintiff. *United States* ex rel. *Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 329 (6th Cir. 1998). Because Plaintiff is asserting a factual attack on subject matter jurisdiction, she is not entitled to any presumptive truthfulness as to her factual allegations. *See Tyson v. United States*, 2007 WL 1840078, at *1-2 (E.D. Mich. June 26, 2007). Rather, "this Court may weigh the evidence and resolve any factual disputes when adjudicating such a jurisdictional challenge." *Kennedy v. U.S. Veterans Admin.*, 2011 WL 6296732, at *1 (S.D. Ohio Dec. 16, 2011).

---

[3] The FTCA often requires courts to apply both state and federal law to the same claims. "First, the district court applies local law to determine liability and to assess damages. Second, federal law is invoked to bar proscribed recoveries, such as punitive damages." *Kirchgessner v. United States*, 958 F.2d 158, 169 (6th Cir. 1992). As a threshold jurisdictional matter, however, the Court must apply federal law to determine whether an entity is a contractor under the FTCA. *Fisher*, 356 F.2d at 708.

II.

The Court will first consider DL Entities' motion. To do so, the Court must address two main issues: whether DL Joint Venture is a government employee or independent contractor and whether additional discovery is necessary.

A.

The FTCA provides "a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976). The FTCA grants original jurisdiction to federal district courts over claims against the United States arising from the negligence of its employees and agencies, but it specifically excepts "contractors" from the definition of federal agencies. *See* 28 U.S.C. § 2671. Because independent contractors are not considered agents or employees of the United States, an independent contractor cannot be held liable under the FTCA.

The Supreme Court has said that "the power of the Federal Government 'to control the detailed physical performance of the contractor' is a critical factor distinguishing federal agents and employees from independent contractors." *Orleans*, 425 U.S. at 814 (citing *Logue v. United States*, 412 U.S. 521, 528 (1973)). A component of this factor is whether the government supervises the actor's day-to-day operations. *Id.* at 815. The Sixth Circuit has not addressed the application of this standard in any depth.[4]

---

[4] The briefs present few Sixth Circuit cases analyzing the applicability of the independent contractor exception, and this Court's investigation has likewise upturned scant guidance on the issue. In the one case where the issue was presented, the Sixth Circuit answered the question perfunctorily. In *Durbin v. United States*, the Sixth Circuit concluded in a one-page opinion without explanation that "[h]ere, the acts alleged fall within the independent contractor exception to the FTCA." 996 F.2d 1214, at *1 (6th Cir. 1993)(unpublished).

In other cases where the independent contractor exception is applicable, the Sixth Circuit did not engage in the type of analysis this particular case requires. For example, in *Gowdy v. United States*, the Sixth Circuit accepted

The Court agrees with the Fourth Circuit that "the real test is control over the primary activity contracted for and not the peripheral, administrative acts relating to such activity." *Wood v. Standard Prods. Co., Inc.*, 671 F.2d 825, 832 (4th Cir. 1982). Therefore, an important source of evidence as to the dynamics of a contractual relationship between two entities is the contract itself. *See Fraser v. United States*, 490 F.Supp. 2d 302, 310 (E.D.N.Y. 2007)("Courts look to the terms of the contract to determine whether the Government controlled the detailed physical performance of the contractor or whether the Government supervised the day-to-day operations of the contractor."). The DL Entities argue that the specific provisions of their building maintenance services contract prove that it was an independent contractor, while the Plaintiff views the same provisions as evidence of an employer-employee relationship.

The contract describes only DL Joint Venture's performance-based obligations, and requires DL Joint Venture to provide all management, supervision, and the labor, materials, supplies and equipment necessary to perform the contract. What the contract does not provide is also illustrative of the relationship between DL Joint Venture and GSA. For example, although the contract outlines DL Joint Venture's major responsibilities, it does not prescribe how DL Joint Ventures must perform those responsibilities. *See, e.g.*, *Cowden v. U.S. Dep't of Labor*, 2005 WL 1691036, at *12 (E.D. Ky. July 18, 2005)(holding that because the alleged employee entity hired and retained its own staff, maintained responsibility for the administration and operation of the government building, and the government only dictated that the entity abide by broad guidelines, the entity was an independent

---

that the negligent actor was an independent contractor and analyzed the extent to which the United States could be held responsible for injuries sustained by the employees of its independent contractors. 412 F.2d 525, 529 (6th Cir. 1969). The Sixth Circuit entertained the same sort of analysis in *Angel v. United States*, 775 F.2d 132 (6th Cir. 1985). In both *Gowdy* and *Angel*, the Sixth Circuit did not inquire, as a preliminary matter, whether the entity at issue was an employee or an independent contractor. However, as a federal law issue, this Court will look to the judgments of other courts that have more thoroughly considered this issue as instructive.

contractor). So, while the contract outlines standards for performance, it does not provide a procedural guideline or a detailed manual for the work.

Thus, based upon the contractual language alone, the Court concludes that the parties intended DL Joint Venture to be an independent contractor for the United States. Nevertheless, Plaintiff makes three distinct arguments that DL Joint Venture is actually an employee of the United States. If so, she could assert these FTCA claims against DL Joint Venture.

1.

Plaintiff's first and most persuasive argument is that GSA retained some areas of control over building maintenance. Specifically, Plaintiff lists twenty-three items that suggest the type of detailed physical control and day-to-day supervision of a typical employer-employee relationship. Of particular importance are the following reservations of responsibility:

(a) Ensuring compliance with contract requirements;
(b) Approving building operating plans and quality control plans;
(c) Performing inspections of the building;
(d) Supervising work through monthly progress reports; and
(e) Establishing and ensuring compliance with maintenance standards.

Upon closer review, these retained powers equate to the right to generally oversee the performance of the contract and to inspect the building to ensure its proper repair. Retaining these powers does not translate into detailed day-to-day control over contract performance. The general view seems to be that retaining the right to inspect performance and supervise compliance with the contract does not establish an employee relationship; the employee relationship requires a more hands-on and day-to-day supervisory arrangement. *See Hsieh v. Consolidated Engineering Servs., Inc.*, 569 F.Supp. 2d 159, 177 (D.D.C. 2008)("[T]he government may reserve the right to inspect

the contractor's work and monitor its compliance with federal law without vitiating the independent contractor exception.").

Under Plaintiff's argument, an independent contractor contract must devise a blueprint whereby the government is completely divorced from the performance of the contract, granting total and unfettered control over the contract to the independent contractor. The Court disagrees with such a characterization. The government cannot reasonably be expected to forfeit all rights of general supervision when it contracts out services.

In a related argument, Plaintiff claims that GSA also maintained ultimate responsibility for the safety of its building, dictating a certain level of control over the building itself. However, that the United States retained a right to inspect the building and ensure its safety does not vitiate the independent contractor status. *See Orleans*, 425 U.S. at 815 (holding that the reservation of rights to inspect provided a general supervisory option for the federal government that did not overcome the independent contractor designation).

2.

Next, Plaintiff argues that GSA employees sustained a constant presence at the Mazzoli Building, demonstrating the government's daily supervisory role over DL Joint Venture. However, the daily presence of GSA employees does not necessarily mean that those employees supervised DL Joint Venture's work and does not obviate the independent contractor-principal relationship. *See Lipka v. United States*, 369 F.2d 288, 290-92 (2d Cir. 1966)(holding that maintaining some government staff on site did not charge that staff with "full responsibility for the safety of its contractors' employees"). Again, to find otherwise would suggest that to constitute an independent contractor-principal relationship, the principal must completely divorce itself from the performance

7

of the contract *and* prevent any of its own employees from maintaining a presence at the worksite. The Court will not support this conclusion.

3.

Plaintiff finally contends that GSA did not explicitly contract away its duty to warn of dangerous conditions. However, the duty to warn of dangerous conditions is inherently encompassed within the general transfer of the responsibility to maintain the building and ensure the safety of its inhabitants, exactly what GSA contracted away. As stated above, retaining some precursory form of building oversight does not destroy the independent contractor characterization. "The law is clear that the government may delegate its safety responsibilities to independent contractors in the absence of federal law or policies restricting it from doing so." *Hall v. United States*, 149 F.3d 1183, at *3 (6th Cir. 1998)(quoting *Andrews v. United States*, 121 F.3d 1430, 1440 (11th Cir. 1997)). Plaintiff has not pointed to any federal law restricting the delegation of this duty to an independent contractor.

Because Plaintiff has not succeeded in convincing the Court that DL Joint Venture was a government employee, Plaintiff cannot bring FTCA claims against DL Joint Venture. The DL Entities must therefore be dismissed as parties to this litigation, because the entire Complaint was brought under the FTCA.[5]

B.

Plaintiff also requests more time to engage in discovery to determine the exact nature of the relationship between GSA and DL Joint Venture and to uncover evidence relating to other issues.

---

[5] Plaintiff makes an argument that even if DL Joint Venture is an independent contractor, this Court maintains jurisdiction over the claims under 28 U.S.C. § 1332(a) on diversity grounds. However, if DL Joint Venture is an independent contractor, and the FTCA claims against DL Joint Venture are dismissed, the Court has no jurisdiction over defendants against whom the plaintiff has no claims.

The Court disagrees. The parties have engaged in a normal period of discovery. It is apparent from the briefs that both parties have ample evidence to argue their respective positions. Plaintiff has not identified a category of evidence that would improve Plaintiff's ability to overcome the DL Entities' Motion to Dismiss. For these reasons, the Court will sustain the DL Entities' Motion to Dismiss.

### III.

The Court will now examine whether GSA is entitled to sovereign immunity on the claims against it. Relevant here, the FTCA excepts two types of claims from its limited waiver of sovereign immunity: (1) those against the federal government's independent contractors and (2) those falling under certain enumerated exceptions. *Milligan v. United States*, 670 F.3d 686, 692 (6th Cir. 2012). Limitations on the waiver of sovereign immunity or consent to suit must be strictly construed in favor of the United States. *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986). Here, the United States argues that it is entitled to sovereign immunity over two claims and is excepted from the waiver of sovereign immunity on the third claim.

### A.

Initially, the Court will consider Plaintiff's first two negligence claims: (1) maintaining an unreasonably dangerous condition and (2) failure to warn about the unreasonably dangerous condition. Under the FTCA, the United States is responsible for the negligence of its employees and agencies. Here, GSA delegated the maintenance and safety of the Mazzoli Building to DL Joint Venture. Because the Court has found that DL Joint Venture is an independent contractor, the United States cannot be sued for DL Joint Venture's negligence in the maintenance and safety of the building. *See, e.g.*, *Roditis v. United States*, 122 F.3d 108, 111 (2d. Cir. 1997) (holding that "sovereign immunity precludes suits against the United States for injuries caused by its independent

9

contractors"); *Moreno v. United States*, 965 F.Supp. 521, 524 (S.D.N.Y. 1997) (holding that Plaintiff's claims against the United States must be dismissed on 12(b)(1) grounds where the contract "explicitly assigned to [the independent contractor] the responsibility to perform all maintenance, repairs and alterations necessary to ensure that the Building was safe").

The duty to warn of a dangerous condition is entwined with the responsibility to ensure the building's safety,[6] and the contract proves that building safety is exclusively DL Joint Venture's responsibility. It is worth noting that "[t]he mere reservation of the right to inspect work [does] not impose upon the Government any duty of inspection or control." *Gowdy v. United States*, 412 F.2d 525, 529 (6th Cir. 1969). Plaintiff has not proven that any party other than DL Joint Venture was responsible for the negligent maintenance of the fire door or failure to post warnings about it. For that reason, the federal government retains sovereign immunity for the acts of its independent contractor, DL Joint Venture, for negligence in maintaining an unreasonably dangerous condition and for failure to warn about this condition.[7]

---

[6] As to the failure to warn claim, Plaintiff argues that the discretionary function exception is not applicable. However, GSA did not assert that the discretionary function exception applied to this claim, but rather, asserted that the duty to warn fell within the duties delegated to DL Joint Venture. Even if the Court found that the government retained some responsibility to warn of dangerous conditions from its contract with DL Joint Venture, the Court would likely find that the decision as to whether to warn the public of the dangerous condition is in fact a discretionary action, falling within the discretionary function exception explained thoroughly in the subsequent section. *See Rosebush v. United States*, 119 F.3d 438, 443 (6th Cir. 1997)("[T]he decision whether to warn of potential danger is a protected discretionary function.").

[7] The Court understands the harsh consequences of its conclusions. However, the Court did not create the circumstances. Plaintiff may have had a viable state law tort claim against the DL Entities, except that this lawsuit was filed outside the state one-year statute of limitations for this type of negligence claim. Plaintiff had no choice but to bring the entire Complaint under the FTCA, an understandable decision considering the status of DL Joint Venture as an employee or independent contractor is a close question. The FTCA therefore does not ordinarily prevent a person from suing an independent contractor altogether; the statute simply prevents a lawsuit against the independent contractor under its provisions.

Had the state statute of limitations not expired, Plaintiff would have had options for relief against the DL Entities under other relevant law. For example, Plaintiff could have asserted the FTCA claim in federal court against the GSA and the DL Entities on the employee theory, and perhaps obtained supplemental jurisdiction over state law negligence claims against the DL Entities. *See, e.g.*, *Richerson v. United States*, 104 F.3d 361 (6th Cir. 1996). Additionally, Plaintiff could have brought suit in state court against the DL Entities on the state law claim. *See, e.g.*, *Kassaw v. Minor*, 717 So.2d 382 (Ala. Civ. App. 1998). In sum, a plaintiff in a similar situation is not foreclosed

B.

As to the negligent hiring and supervision claim, Plaintiff argues that GSA failed in its duty of reasonable care when it hired and then failed to adequately supervise DL Joint Venture. GSA argues that its hiring and supervision activities are discretionary decisions that fall within the FTCA exception to the sovereign immunity waiver for discretionary functions under 28 U.S.C. § 2680(a).[8]

Under the FTCA, where the government takes an action that is within its discretionary authority, federal courts lack subject matter jurisdiction over a claim challenging the lawfulness of that action. *Rosebush v. United States*, 119 F.3d 438, 440 (6th Cir. 1997). A discretionary action is one "that involves an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991)(internal quotation marks and citations omitted). Therefore, where the government official is constrained to act in a particular manner under a statute, regulation or policy that specifically prescribes a course of action, the act is not discretionary and cannot fall within this exception. *Id.*

In *Gaubert*, the Supreme Court established a two-part test to determine whether an action falls within the discretionary exception. First, the Court must decide whether the "challenged government act or omission 'violated a mandatory regulation or policy that allowed no judgment.'" *Hall v. United States*, 149 F.3d 1183, at *2 (6th Cir. May 27, 1998)(quoting *Gaubert*, 449 U.S. at 322-23). If so, the government cannot rely on the discretionary function exception. If not, however,

---

from bringing suit against an independent contractor if she files suit within the state law statute of limitations.
[8] 28 U.S.C. § 2680(a) provides,
    The provisions of this chapter and section 1346(b) of this title shall not apply to –
        (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

11

the Court must then decide "whether that judgment involved considerations of public policy. If it did, the discretionary functions exception applies." *Id.*

GSA's decisions to hire independent contractors seems clearly discretionary in these circumstances. *See O'Bryan v. Holy See*, 556 F.3d 361, 387 (holding that "claims of negligent hiring fall within the discretionary function exception"). Foremost, the GSA must first choose whether to contract out these services. Once that decision is made, GSA must decide how to outline the requirements of the contract, select the entities or persons to perform it, and establish a system to monitor it. Each of these decisions require the exercise of judgment. The Court can find no specific laws or regulations governing GSA's decision to subcontract building maintenance.[9] Therefore, Plaintiff fails to show that GSA's actions were not discretionary, and the analysis continues to the second-prong of the discretionary function test.

Under the *Gaubert* test, Plaintiff can still maintain the action if GSA's decisions were not the product of public policy considerations. Deciding to subcontract building maintenance work to an independent entity would seem to be a policy decision under which GSA would weigh its concerns for the adequate operation and safety of the federal office building with considerations of economy and efficiency. *See, e.g.*, *O'Bryan*, 556 F.3d at 384 (quoting *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997), that "[t]he hiring, training, and supervision choices that [the defendant] faces are choices susceptible to policy judgment").

Such a decision would include consideration of numerous factors, "including budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity,

---

[9] In fact, Plaintiff only argued that GSA's failure to warn of the unreasonably dangerous condition was not a discretionary decision, an assertion GSA never made. Accordingly, Plaintiff never contested GSA's contention that the hiring and supervision of DL Joint Venture were discretionary functions.

experience, and employer intuition." *Id.* The Supreme Court has emphasized that the discretionary function exception is a pivotal FTCA provision, designed "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *United States v. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). This seems precisely the type of decision that falls within the purpose of the exception. Satisfying the discretionary function test, the United States enjoys sovereign immunity over Plaintiff's negligent hiring and supervision claim. Accordingly, all three claims against GSA must be dismissed.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that DaeSung Corporation, LB&B Associates, Inc., and DaeSung/LB&B Joint Venture's Motion to Dismiss is SUSTAINED.

IT IS FURTHER ORDERED that the United States' Motion to Dismiss is SUSTAINED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

This is a final order.

cc: Counsel of Record